NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

UNITED ASSOCIATION OF JOURNEYMEN & APPRENTICES OF the PLUMBING & PIPEFITTING INDUSTRY OF the U. S. AND CANADA, LOCAL NO. 195, Respondent.

No. 77-3124
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 12, 1978.

Elliott Moore, Deputy Assoc. Gen. Counsel, William Stewart, Supervisor, Charles Donnelly, Atty., John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Assoc. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

William N. Wheat, Beaumont, Tex., for respondent.

Before RONEY, GEE and FAY, Circuit Judges.

PER CURIAM:

In this unfair labor practice enforcement proceeding against a union, we hold that substantial evidence supports the finding of a section 8(b)(4)(D), 29 U.S.C.A. § 158(b)(4)(D), violation following a 10(k), 29 U.S.C.A. § 160(k), Decision and Determination of Dispute when the union refuses to comply with the Board order to notify the Regional Director in writing that it will not attempt to force or require the employer, by means proscribed by section 8(b)(4)(D), to award the work in dispute to its members rather than to unrepresented employees. 231 N.L.R.B. No. 90.

The facts and legal issue are succinctly and properly addressed in the decision of Administrative Law Judge James T. Rasbury, affirmed by the Board, the relevant portions of which are annexed hereto as an appendix to this opinion.

ENFORCED.

APPENDIX

III.  The Alleged Unfair Labor Practices

A.  *The Issue*

The issue here is a very narrow one and may be succinctly stated as follows: Fol-

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

lowing the Board's 10(k) Decision and Determination of Dispute, does a respondent union violate Section 8(b)(4)(D) of the Act if it fails to comply with that portion of the decision which requires that it notify the appropriate Regional Director, "in writing, whether or not it will refrain from forcing or requiring the employer, by means proscribed by Section 8(b)(4)(D), to award the work in dispute to its members rather than to the unrepresented employees"?

B. *Background and Facts of the Dispute* [2]

During April and May, the Employer was involved in connecting a South Hampton Company petrochemical pipeline to its storage tanks in Orange County, Texas. The disputed work involves the installation of piping, flanges and valves on the storage tanks located on the Employer's premises. At the time the dispute arose, the Employer had assigned this work to its own employees who were not represented by any union.

Subsequent to hearing rumors that the Pipefitters claimed the work and were planning to picket, Chief Engineer Fred R. Crawford, on or about April 26, met with the Union's business agent, Volentine, at the Pipefitters hall in Nederland, Texas. At this meeting, Crawford explained that the disputed work would be performed by employees of Texas Oil & Chemical Terminals. Volentine maintained that the disputed work was new construction and argued that the Union was performing all the new construction in this area. Crawford testified that the conversation ended with a statement by Volentine that "I [Crawford] could go ahead and do what I wanted to do, and that he [Valentine] would do what he had to do . . .."

Around 10:30 a. m. on May 3, a union business agent, Ellis, and two other men approached Crawford and Working Foreman Waldo at the Employer's facility in Orange County, Texas, asked them by whom the piping work would be performed, and, when told that Texas Oil & Chemical Terminals employees would perform the work, stated that a picket would be placed at the facility gate.

Shortly thereafter the Union commenced picketing the only entrance to the Employer's facility with a sign that stated:

This is to advise that South Hampton Company· does not employ nor do they have a contract with Pipefitters Local 195.

Thereafter, Employer's employees who were performing the work in dispute left the worksite and refused to cross the picket line until after the picketing ended.[3]

On May 10, the United States District Court of the Eastern District of Texas in Beaumont, Texas, pursuant to a petition for an injunction under Section 10(*l*) of the Act, entered a temporary restraining order enjoining picketing, threats and other coercive conduct by the Union at the Employer's facility. A stipulated injunction was entered by the court on May 12.

As indicated, on April 26 and May 3, union representatives claimed the disputed work. Thereafter, the Union picketed the only entrance to the Employer's facility. Crawford testified that one of the pickets told him in the presence of Ellis that "the only way we [the Employer] would ever get the pipe installed on those tanks was to sign a contract with Local 195, the Pipefitters." It is clear that the object of the Pipefitters picketing was to have the Employer assign

2. This summary has been taken directly from the Board's Decision and Determination of Dispute which issued on September 23 (226 NLRB No. 6) and which is in evidence as part of the General Counsel's formal papers (G.C.Exh. 1(a)). Additionally, Chief Engineer Fred R. Crawford appeared before me and reaffirmed his earlier testimony.

3. The employees of the two subcontractors who were performing work on the premises,

General American Transportation Corporation and Nacogdoches Fabricating Company, stopped working when the picketing commenced and refused to cross the picket lines until after the picketing ended. The employees of the third subcontractor, Dillahunty Electric Company, worked for the remainder of the day and then refused to cross the picket line until the picketing ceased.

the disputed work to the Union. There is no evidence that the parties have agreed upon a method for the voluntary adjustment of the dispute. Accordingly, we find that there is reasonable cause to believe that Section 8(b)(4)(D) has been violated and that the dispute is properly before the Board for determination under Section 10(k) of the Act.

The limited testimony presented by the Employer and the failure of the Pipefitters to appear at the hearing resulted in evidence pertinent to only a few of the relevant factors which the Board normally considers in making an award of the disputed work.[4]

The Board reached the following conclusion and set forth its Decision and Determination of Dispute in the following language:

In the absence of any contractual obligation to the Union for performance of the disputed work, or evidence with respect to any other relevant factors, we conclude that the assignment of the work to its employees by the Employer, their qualification to do the work, and their performance of the work in a satisfactory manner require an award of the disputed work to the unrepresented employees of the Employer.

## DETERMINATION OF DISPUTE

Pursuant to Section 10(k) of the National Labor Relations Act, as amended, and upon the foregoing findings and the entire record in this case, the National Labor Relations Board hereby makes the following Determination of Dispute:

1. The Employer's unrepresented employees are entitled to perform the work of installing the piping, flanges and valves on its storage tanks.

2. United Association of Journeymen and Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada, Local No. 195, is not entitled, by means proscribed by Section 8(b)(4)(D) of the Act, to force or require the Employer to award the above work to its members or to employees it represents.

3. Within 10 days of the date of this Decision and Determination of Dispute, United Association of Journeymen and Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada, Local No. 195, shall notify the Regional Director for Region 23, in writing, whether or not it will refrain from forcing or requiring the Employer, by means proscribed by Section 8(b)(4)(D), to award the work in dispute to its members rather than to the unrepresented employees.

### C. Evidence of Events Which Have Transpired Since the Board's 10(k) Determination

The evidence is clear and convincing that Respondent has not complied with paragraph numbered 3 in that portion of the Board's "Determination of Dispute" as immediately set forth above. When asked to stipulate regarding Respondent's failure to comply with the provisions of paragraph 3, Respondent's counsel replied "I have not, to my knowledge, and to my knowledge the Respondent's officers have not presented any written document to the Regional Director concerning the intentions of the Respondent to comply or not to comply with the Determination of Dispute by the Board." In order to make the record clear that there had been no oral agreement by Respondent to comply with the Board's Order, Respondent's counsel was requested to make a statement in this regard and stated in open court: "It is my recollection that the essence of the conversation was that I took the position that I could not promise in writing, or verbally, for that matter, that there would never be any further picketing by Pipefitters Local 195 . . .."

Mr. Crawford's testimony made it equally clear, however, that Respondent has not

---

4. *N.L.R.B. v. Radio and Television Broadcast Engineers Union, Local 1212, International Brotherhood of Electrical Workers, AFL–CIO (Columbia Broadcasting System)*, 364 U.S. 573 [81 S.Ct. 330, 5 L.Ed.2d 302] (1961); *International Association of Machinists, Lodge No. 1743, AFL–CIO (J. A. Jones Construction Company)*, 135 NLRB 1402, 1410–11 (1962).

actually picketed or in any manner threatened to picket in violation of the Board's Decision and Determination of Dispute. In fact he testified there had been no contact whatsoever between Respondent and the Employer since September 23.

### D. *Respondent's Arguments*

As I perceive the Respondent counsel's arguments, they are as follows: (1) The Board's own rules do not require the Respondent to submit notice in writing of its intent to comply.[5] (2) Respondent argues there has been no contact whatsoever between it and the Employer since the Board's Determination of Dispute and therefore it cannot possibly be guilty of "engaging in, inducing or encouraging," etc., in violation of the statute. (3) The scheme of the Act relates only to jurisdictional disputes between *rival unions* and the Act was never intended to cover "claimed work" disputes between a union and an unrepresented group of employees. (4) That the Act specifically permits picketing for informational and recognitional purposes and, except as set forth in Section 8(b)(7)(C) of the Act, under the factual situation of this case a violation cannot be found.

### *Analysis*

Respondent's arguments are both interesting and clever, but if they have any validity they should have been advanced at the time of the 10(k) hearing. As the Board recently stated in *Plaza Glass Company*,[6] " . . . it is established that a hearing *de novo* is not required in the unfair labor practice case on issues litigated in the previous 10(k) proceeding, especially where, as here, Respondent offers nothing not previously considered therein."

In my opinion the Respondent reads the Board's Rules and Regulations (Section 102.91) much too narrowly. That section requires Respondent to comply with the Board's *Determination*. The Board's Decision and Determination must be read in its entirety and not piecemeal. A portion of that *Determination* requires the Respondent to advise the Regional Office, in writing, whether or not it will refrain from forcing or requiring the employer, by means proscribed by Section 8(b)(4)(D), to award the work in dispute to its members rather than to the unrepresented employees. This is an essential part of the Board's determination and it is undenied that the Respondent has not complied.

The Board has already found that there was a dispute over certain work being performed; that Respondent sought to have that disputed work assigned to it by picketing and by threatening that "the only way we [the Employer] would ever get the pipe installed on those tanks was to sign a contract with Local 195, the Pipefitters." This Decision and Determination of Dispute is as binding on me as I believe it to be on the Respondent, and I have no alternative but to accept and give it full force and credit.

The Respondent's contention that the Act contemplates only jurisdictional disputes between rival unions and thus the instant situation should not be considered as being proscribed by Section 8(b)(4)(D), because the Employer's employees are unrepresented is misplaced. This issue was settled a number of years ago by the Board. In *Teamsters Local 175 (Biagi Fruit and Produce Company)*, 107 NLRB 223, the Board,

---

5. Section 102.91 of the Board's Rules and Regulations reads as follows:

   *Compliance with Determination; further proceedings.* If, after issuance of the determination by the Board, the parties submit to the regional director satisfactory evidence that they have complied with the determination, the regional director shall dismiss the charge. If no satisfactory evidence of compliance is submitted, the regional director shall proceed with the charge under paragraph (4)(D) of Section 8(b) and Section 10 of the Act and the procedure described in Section 102.9 to 102.51, inclusive, shall insofar as applicable, govern; *Provided, however,* That if the Board determination is that employees represented by a charged union are entitled to perform the work in dispute, the regional director shall dismiss the charge as to that union irrespective of whether the employer has complied with that determination.

6. 218 NLRB 848, 849; enfd. Slip Op. No. 75–3261, January 17, 1977 (C.A.9), 94 LRRM 2490.

under factual circumstances very similar to those in the instant case had this to say:[7]

It is clear from the record that the Respondent has no immediate or derivative rights under any existing contract upon which it could predicate any lawful claim to the work in dispute. As indicated above, *the Company has no bargaining relations with the Respondent or with any other union*. Nor does it appear that the Company is failing to conform to any order or certification of the Board determining the bargaining representative for the employees performing the work in dispute. Neither is there any question that the Company has assigned the work to its own employees.

These facts are determinative of the present dispute. The Board has held that Sections 8(b)(4)(D) and 10(k) "do not deprive an employer of the right to assign work to his own employees, nor were they intended to interfere with an employer's freedom to hire, subject only to the requirement against discrimination as contained in 8(a)(3)." Consequently, in determining this dispute, it is sufficient on the facts before us that the Company assigned the work to its own employees, and that the Respondent engaged in proscribed activities to force or require the Company to assign this work to its own members.

Accordingly, we find that the Respondent is not lawfully entitled to force or require the Company to assign the work of unloading its trucks at the Kroger warehouse at Charleston, West Virginia, to its members rather than to employees of the Company. [Citations omitted. Underscoring added.]

The Board has recently made it crystal clear that:

[C]ompliance with a 10(k) award requires a good faith intent by the particular respondent to accept and abide thereby, including

the performance of substantially the same acts as are required for a showing for an intent to comply with the remedial Order of the Board.[7] This showing includes, *inter alia*, a timely and unequivocal written statement to the Regional Director indicating such an intent, as is required by the 10(k) award.[8]

The Ninth Circuit in approving the Board's Decision in *Plaza Glass Co.* (cited *supra*) pointed out that the Supreme Court has held that the APA does not apply to Section 10(k) proceedings; however, findings made in such a proceeding can be relied upon as *evidence* that an unfair labor practice has occurred even in a proceeding governed by the APA. In approving the Board's Decision in *Plaza Glass Co.*, the Court said, "In order to comply, a party is required to notify the Board of its intent to comply. Respondent did not do so. Therefore, the Board was justified in acting on the prior charge."

On the basis of clear and unmistakable evidence and Board decisions supported by the courts, I find that the Respondent Union, by failing and refusing to notify the Regional Director for Region 23, in writing, of its intent to comply with the Board's Decision and Determination of Dispute issued on September 23 (226 NLRB No. 6), has not complied with the award and has thus violated Section 8(b)(4)(D) of the Act.

---

**7.** See, also, *I.B.E.W. Local 639 (Bendix Radio Div.)*, 138 NLRB 689.

**7.** Cf. *Local 595, International Association of Bridge, Structural and Ornamental Ironworkers, A. F. L., et al. (Bechtel Corporation)*, 112 NLRB 812 (1955).

**8.** *Bechtel Corporation, supra; Local 568, International Association of Bridge, Structural and Ornamental Ironworkers, AFL–CIO (Dickerson Structural Concrete Corporation)*, 204 NLRB 59 (1973).